---

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------X
In re

The Bravo Realty Group, LLC,                    Chapter 11
                                                Case No. 13-11330-reg


                            Debtor.
----------------------------X

<u>DEBTOR'S DISCLOSURE STATEMENT</u>

[THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY AFFECT CREDITORS' DECISIONS TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION ANNEXED HERETO AS EXHIBIT A. ALL CREDITORS ARE URGED TO READ THIS DISCLOSURE STATEMENT CAREFULLY. ALL CAPITALIZED TERMS CONTAINED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE SAME MEANING AS CAPITALIZED TERMS CONTAINED IN THE PLAN OF REORGANIZATION.]

[COURT APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE COURT APPROVAL OF THE TERMS OF THE PLAN.]


Gabriel Del Virginia, Esq. (GDV-4951)
LAW OFFICES OF GABRIEL DEL VIRGINIA
880 Third Avenue, 13th Floor,
New York, New York 10022
Telephone: 212-371-5478
Facsimile: 212-371-0460
gabriel.delvirginia@verizon.net


ATTORNEYS FOR THE DEBTOR

## __INTRODUCTION__

1.    [The Bravo Realty Group, LLC, the debtor and debtor in possession ("Proponent" or "Debtor"),  Debtor submits this Disclosure Statement ("Disclosure Statement") in connection with the solicitation of acceptances of its Plan of Reorganization ("Plan") under Chapter 11 of the United States Bankruptcy Code.] A copy of the Plan is attached hereto as <u>Exhibit "A"</u>.  All Creditors are urged to review the Plan, in addition to reviewing this Disclosure Statement.  <u>All capitalized terms used but not defined herein shall have the meaning set forth in the Plan.</u>

2.    This Disclosure Statement is not intended to replace a review and analysis of the Plan.  Rather, it is submitted as a review of the Plan in an effort to explain the terms and implications of the Plan.  Every effort has been made to fully explain the various aspects of the Plan as it affects all Creditors.  To the extent a Creditor has any questions, the Debtor urges you to contact its counsel and every effort will be made to assist you. **THE DEBTOR URGES YOU TO VOTE IN FAVOR OF THE PLAN. THE DEBTOR'S GOAL IS FOR ALL CREDITOR CLASSES TO ACCEPT THE PLAN.  IF ALL CREDITOR CLASSES DO NOT ACCEPT THE PLAN, THE DEBTOR INTENDS TO SEEK CRAMDOWN OF THE PLAN UNDER**

**SECTION 1129(b) OF THE BANKRUPTCY CODE AS MAY BE NECESSARY TO EFFECT CONFIRMATION OF THE PLAN.**

3.   [On _____ x, 2013, after notice and a hearing, the Bankruptcy Court entered an order approving this Disclosure Statement as containing information of a kind and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, to enable Creditors whose votes are being solicited to make an informed judgment whether to accept or reject the Plan.]

4.   Creditors should read this Disclosure Statement in its entirety prior to voting on the Plan.  No solicitation of votes may be made except pursuant to this Disclosure Statement. **EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT, NO REPRESENTATIONS CONCERNING THE DEBTOR, ITS ASSETS, ITS PAST OR FUTURE OPERATIONS, OR THE PLAN ARE AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN.  ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR.**

5.    **THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUPPLIED BY THE DEBTOR.  THE DEBTOR'S BOOKS AND RECORDS HAVE BEEN USED TO PROVIDE THE INFORMATION CONCERNING THE DEBTOR'S FINANCIAL CONDITION AS SET FORTH IN THIS DISCLOSURE STATEMENT.  BASED UPON THE INFORMATION MADE AVAILABLE, DEBTOR'S COUNSEL HAS NO INFORMATION TO INDICATE THAT THE INFORMATION DISCLOSED HEREIN IS INACCURATE.  NEITHER THE DEBTOR NOR ITS COUNSEL, HOWEVER, IS ABLE TO STATE DEFINITIVELY THAT THERE IS NO INACCURACY HEREIN OR THAT FUTURE EVENTS MAY NOT RENDER THE INFORMATION CONTAINED HEREIN INACCURATE.**

6.    [After reviewing this Disclosure Statement indicate your vote to accept or to reject the Plan on the enclosed ballot, and return the ballot to counsel for the Debtor so as to be received on or before _____  x, 2013.]

7.    [The Bankruptcy Court has entered an Order fixing _____  x, 2013, at 3:00 p.m., at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, as the date, time and place for the hearing on confirmation of the Plan, and fixing _____  x, 2013, as the last date for the filing of any objections to confirmation of the Plan.]

4

## BACKGROUND

8.   On April 28, 2013, the Debtor filed a Chapter 11 petition under Title 11 of the United States Code, 11 U.S.C. §§101 et seq. (the "Bankruptcy Code").

9.   The Debtor is a New York limited liability company in the business of owning and managing real estate. The Debtor operates from its office (the "Office") located at 1374 First Avenue Suite 1A New York, New York, 10021 in the Borough of Manhattan, City of New York.   The Debtor's assets consist primarily of five apartment buildings located at 2331-2337 Second Avenue and 246-248 East 120th Street, New York, New York 10021 in the Borough of Manhattan, City of New York (the "Premises," or the "Property").   The Premises consist of commercial space on the ground floor of the apartment buildings located on Second Avenue and approximately 40 residential units (the "Apartments"). Information about the Debtor's business and the events leading up to its bankruptcy filings can be found in the Declaration of Mr. Frank Pecora, the Debtor's Manager/Member, pursuant to Local Bankruptcy Rule 1007-2 (the "Pecora Declaration"), which is incorporated herein by reference.

10.   The Premises are currently vacant due to vacate orders (the "Vacate Orders") issued by the New York City Department of Buildings and New York City Fire Department(collectively "New York City"). Approximately 20 of the Apartments have vacated tenants (the "Tenants"). Those Tenants retain their leases (the "Leases") to their respective Apartments, but do not currently reside in those Apartments because of the Vacate Orders. Five of the Tenants have instituted a lawsuit (the "Tenant Law Suit") against the Debtor as a result of the Vacate Orders. (See Pecora Declaration, at ¶ 3.) Numerous other tenants are represented by counsel in conjunction with their claims, but have not yet commenced litigation.

11.   The  Debtor believes that the requisite number of Tenants will: (i) consensually agree to an amount owed to them as a result of Vacate Orders without the need for judicial intervention, and  (ii) will accept the Plan. However, the Debtor believes that if the Tenants fail to consensually agree to settle the matter, the Debtor will prevail in a judicial proceeding and establish that the amount owed to the Tenants is not greater [$300,000.00].

12.  On  or  about  August  12,  2012,  Margaret  Pecora ("Plaintiff")  filed  an  action  against  the  Debtor  and  other defendants  under  Index  No.  653386/2011  (the  "Margaret  Pecora Action")  in  the  New  York  Supreme  Court,  New  York  County  (the "State  Court").  The  Debtor  has  settled  the  Margaret  Pecora Action without the expenditure of any estate funds.  (*See* "Order Approving  The  Settlement  Agreement  Settling  The  Margaret  Pecora Action  In  Which  The  Debtor  Is  A  Nominal  Defendant"  signed  on 8/28/2013- ECF docket #35).

13.  Moreover,  the  New  York  Community  Bank  (the  "NYCB"), which  holds  a  secured  interest  in  the  Premises  has  commenced  a foreclosure  action  (the  "Foreclosure  Action")  alleging  only  non – monetary  defaults.  (*See*  Pecora  Declaration,  at  ¶  5.)  The Debtor  entered  into  a  "so  ordered"  stipulation  with  NYCB addressing  Foreclosure  Action.  (*See*  "So  Ordered  Stipulation signed  on  7/11/2013  Between  Debtor  and  New  York  Community  Bank Granting Adequate Protection" - ECF docket # 21).

14.  The  Debtor's  need  to  seek  relief  was  initially necessitated  by  the  Foreclosure  Action,  Vacate  Orders,  the related  Tenant  Lawsuit  and  other  Tenant  claims,  as  well  as  the Margaret Pecora Action.

## **DEBTOR'S PLAN OF REORGANIZATION**

## **CLASSIFICATION AND TREATMENT OF CLAIMS**

### **Class 1**

15.  **Classification** – Real estate tax and other in rem governmental Lien Claims.  Claims total approximately $xxx,000

16.  **Treatment** -- Payment in full in Cash of Priority Claims within in thirty days of the Effective Date.

17.  **Voting** -- Unimpaired and not allowed to vote on the Plan.

### **Class 2**

18.  **Classification** – NYCB   Claim totals approximately $2,607,790.92

**Treatment** – (i)Payment in full in Cash of Allowed Amount within thirty days of the Effective Date, plus interest at the applicable rate as it accrues from the Petition Date through the date of payment (ii) or payment of the amount necessary to reinstate the Lender's note and mortgage at the non-default contract rate under section 1124(2) of the Bankruptcy Code, in full in cash on the Effective Date and Payment pursuant to the Lender's note and mortgage thereafter, except to the extent that a holder of the NYCB Claim agrees in

8

writing to a different treatment.    The Debtor estimates that the NYCB claim is approximately $2,610,00.90  and it estimates that the cure amount pursuant to section 1124(2) is $234,830.00

19.  **Voting** – Unimpaired and not allowed to vote on the Plan.

### Class 3

20.  **Classification** –   Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code. Claims total approximately $-0-.

21.  **Treatment** – Payment in full in Cash of Priority Claims within in thirty days of the Effective Date.

22.  **Voting** -- Unimpaired and not allowed to vote on the Plan.

### Class 4

23.  **Classification** – Tenant Claim.

24.  **Treatment** – Payment of $10,000.00 to each of the twenty (20) Tenants with a Tenant Claim within thirty days of the Effective Date.

25.  **Voting** –Impaired and allowed to vote on the Plan

### Class 5

26.  **Classification** –  General Unsecured Claims.

27.   **Treatment** – 100% of the allowed amount of each Claim shall be paid within one hundred and twenty (120) days after the Effective Date.

28.   **Voting** –Impaired and allowed to vote on the Plan.

### Class 6

29.   **Classification** – Equity Interests.

30.   **Treatment** – Continued ownership of Interests in exchange for payment of amounts necessary to fund Effective Date payments.

31.   **Voting** – Impaired and allowed to vote on the Plan.

**ADMINISTRATIVE EXPENSES**

32.    Allowed Administrative Expenses shall be paid in full, in cash on the Effective Date, or the date such Administrative Expense becomes Allowed or as soon as practicable thereafter, except to the extent that the holder of an Allowed Administrative Expense agrees to a different treatment; provided, however, that Allowed Administrative Expenses representing obligations incurred in the ordinary course of business or assumed by the Debtor shall be paid in full or performed by the Debtor in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.  The Debtor does not anticipate that there will be any unpaid Administrative Expenses as of the Effective Date.

33.    All outstanding United States Trustee fees shall be paid as they come due.

**MEANS FOR IMPLEMENTATION**

34. **Source of Funds** – Effective Date payments under the Plan will be paid from advanced by the Debtor's Interest Holders as a capital contribution and/or funds from refinancing the xxx.

11

35.  **Vesting** -- Except as otherwise provided in the Plan, on the Effective Date all assets and properties of the Estate shall vest in the Debtor free and clear of all Liens, Claims and encumbrances and any and all liens, claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.  Except as otherwise provided herein, as of the Effective Date, all property of the Debtor shall be free and clear of all Claims and Interests of Creditors, except for the obligations that are imposed under the Plan or by a Final Order of the Bankruptcy Court.

36.  **Execution of Documents** -- The Debtor shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

37.  **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transaction contemplated by the Plan, including,

12

but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

## LIQUIDATION ANALYSIS

38.  In liquidation under Chapter 7 of the Bankruptcy Code, the Debtor's assets would be sold and the sale proceeds distributed to creditors in their order of priority.  The Debtor believes that the Plan provides at least an equivalent return for the Debtor's estate as could be achieved in a liquidation. Indeed, as set forth on Exhibit B hereto, the Debtor projects that in a Chapter 7 liquidation, the return to the Debtor's estate would be reduced by an additional layer of administration legal expenses and commissions, which the Debtor estimates would total at least 15% of the sale proceeds.

## LITIGATION ANALYSIS

39.  Other than the Tenant Lawsuit and Foreclosure Action, the Debtor is not aware of any pending litigation or potential litigation that will materially impact the Plan or the Debtor's reorganization.

40. The following is a list of the other pending litigation:

- Department of Housing Preservation and Development, v Owners of Dwelling 2331 Second Avenue 50/12; 51/12; 52/12; 53/12; 49/12; Civil Supreme Court of the State of New York,(Pending);
- New York State Department of Labor vs. Bravo Realty Group; LS01-2008-012827; Unpaid wages Labor Dept., (Pending); and
- The Bravo Realty Group, LLC v Peter Franklin, 250768/11 Civil Court, City of New York; Housing Part, Rent Collection(Pending).

## <u>PAYMENT OF CLAIMS AND OBJECTIONS TO CLAIMS</u>

41.  The Debtor shall be disbursing agent under the Plan. The Debtor has not completed its claims review and reserves its right to file objections to claims in the event grounds exist to object to particular claims.  The Debtor may file objections to Claims for a period of 60 days after the Effective Date.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Debtor shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full.  To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim.  After all the amounts of all undetermined claims

14

have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

42. All unexpired leases and executory contacts not rejected prior to the Confirmation Date shall be deemed assumed under the Plan. In the event of a rejection of any Executory Contract which results in damage to the other party or parties to the Executory Contract, a Proof of Claim for such damages must be filed by the damaged party with the Court within sixty (60) days after the Effective Date. Each Allowed Claims arising from the rejection of any Executory Contract shall be treated as an Unsecured Claim. Any Claim arising from the rejection of any Executory Contract not filed with the Court within the time period provided in the preceding paragraph above shall be deemed discharged and shall not be entitled to participate in any distribution under the Plan.

## MANAGEMENT OF THE DEBTOR

43. The Debtor is managed by Teams Management LLC which currently receives no compensation.

## TAX CONSEQUENCES

44.   The Debtor does not believe that there will be any negative tax consequences to the Debtor or to Creditors under the Plan.   To the extent that a creditor is not paid in full under the Plan, such creditor may be entitled to a bad debt deduction.   To the extent that a creditor has taken a bad debt deduction, Plan distributions may be taxable as income.

45.   **THE DEBTOR DOES NOT PURPORT, THROUGH THIS DISCLOSURE STATEMENT, TO ADVISE THE CREDITORS OR INTEREST HOLDERS REGARDING THE TAX CONSEQUENCES OF THE TREATMENT OF THE CREDITORS AND INTEREST HOLDERS UNDER THE PLAN.   CREDITORS AND INTEREST HOLDER SHOULD SEEK INDEPENDENT COUNSEL CONCERNING THE TAX CONSEQUENCES OF THEIR TREATMENT UNDER THE PLAN.**

## VOTING PROCEDURES AND REQUIREMENTS

46.   [A ballot to be used for voting to accept or reject the Plan is enclosed with this Disclosure Statement.   Each creditor is entitled to execute the ballot, and return it to the undersigned to be considered for voting purposes.   The Bankruptcy Court has directed that, in order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received no later than September x, 2013, at the

16

following address: **LAW OFFICES OF GABRIEL DEL VIRGINIA** , **880
Third Avenue, 13th Floor, NEW YORK, NEW YORK 10022 ATTENTION:
GABRIEL DEL VIRGINIA ESQ.]**

47. Each Creditor of the Debtor whose Claim is impaired
under the Plan is entitled to vote, if either (i) its Claim has
been scheduled by the Debtor, or (ii) it has filed a Proof of
Claim on or before the last date set by the Bankruptcy Court for
such filings.

48.    Any Claim as to which an objection has been filed
(and such objection is still pending) is not entitled to vote,
unless the Bankruptcy Court temporarily allows the Claim in an
amount which it deems proper for the purpose of accepting or
rejecting the Plan upon motion by a Creditor whose Claim is
subject to an objection.    Such motion must be heard and
determined by the Bankruptcy Court prior to the date established
by the Court to confirm the Plan.

49. A Creditor's vote may be disregarded if the Bankruptcy
Court determines that the Creditor's acceptance or rejection was
not solicited or procured in good faith or in accordance with
the provisions of the Bankruptcy Code.

50.  The Bankruptcy Code defines acceptance of a Plan by a class of Creditors as acceptance by holders of two-thirds in dollar amount and a majority in number of the Claims of that class which actually cast ballots for acceptance or rejection of the Plan.

51.  The Bankruptcy Code defines acceptance of a Plan by a class of Interests as acceptance by holders of two-thirds in amount of the allowed Interests of such class held by holders of such interests.

### CONFIRMATION OF THE PLAN

52.  Section 1128(a) of the Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing on confirmation of the Plan (the "Confirmation Hearing").  Section 1128(b) provides that any party in interest may object to confirmation of the Plan.

53.  [By order of the Bankruptcy Court dated _____ x , 2013, the Confirmation Hearing has been scheduled for _____ x, 2013, at x:00 p.m., in the Honorable ROBERT E. GERBER's Courtroom, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004.  The Confirmation Hearing may be adjourned from time to

18

time by the Bankruptcy Court without further notice except for
an announcement made at the Confirmation Hearing or any
adjourned Confirmation Hearing.  Any objection to confirmation
of the Plan must be made in writing and filed with the
Bankruptcy Court with proof of service and served upon the
following on or before September 11, 2013: **LAW OFFICES OF
GABRIEL DEL VIRGINIA, 880 Third Avenue, 13th Floor, NEW YORK,
NEW YORK 10022 ATTENTION: GABRIEL DEL VIRGINIA ESQ.** Objections
to confirmation of the Plan are governed by Bankruptcy Rule
9014.]

54.  At the Confirmation Hearing, the Bankruptcy Court will
determine whether the requirements of Section 1129 of the
Bankruptcy Code have been satisfied to enter an order confirming
the Plan.  The applicable requirements are as follows:  (a)  The
Plan complies with the applicable provisions of the Bankruptcy
Code, (b) the Debtor has complied with the applicable provisions
of the Bankruptcy Code; (c) the Plan has been proposed in good
faith and not by any means forbidden by law, (d) any payment
made or promised or by a person issuing securities or acquiring
property under the Plan, for services or for costs and expenses
in, or in connection with, the Bankruptcy Case, or in connection

with the Plan and incident to the Bankruptcy Case, has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable, (e) the Debtor has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a Plan with the Debtor, or a successor to the Debtor under the Plan, and the appointment to, or continuance in, such office of such individual, is consistent with the interests of Creditors and equity security holders and with public policy, and the Debtor has disclosed the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such insider, (f) with respect to each class of impaired Claims, either each holder of a Claim or interest of such class has accepted the Plan, or will receive or retain under the Plan on account of such Claim or interest property of a value, as of the Effective Date of the Plan, an amount that is not less than the amount that such holder would

20

so receive or retain if the Debtor was liquidated on such date under Chapter 7 of the Bankruptcy Code, (g) each class of Claims or interests has either accepted the Plan or is not impaired under the Plan, (h) except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative Expenses and priority Claims will be paid in full on the Effective Date, (i) at least one class of impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of such class, and (j) confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor or any successors to the Debtor under the Plan unless such liquidation or reorganization is proposed in the Plan.

55.    The Debtor believes that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, that the Debtor has complied or will have complied with all of the requirements of Chapter 11, and that the proposals contained in the Plan are made in good faith.

56.    The Debtor contends that holders of all Claims impaired under the Plan will receive payments under the Plan

21

having a present value as of the Effective Date in amounts not less than the amounts likely to be received if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

## CRAMDOWN

57.   In the event that any impaired class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtor if, as to each impaired class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable."

58.   The debtor intends to invoke the cramdown provisions of section 1129(b) as to any impaired class that does not accept the plan.

59.   A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives less than it is legally entitled to receive for its Claims or equity interests.   "Fair and equitable" has different meanings for Secured and Unsecured Claims.

60.   With respect to a Secured Claim, "fair and equitable" means either: (a)   the impaired Secured Creditor retains its Liens to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim

with a present value as of the Effective Date at least equal to the value of such Creditor's interest in the property securing its Liens; (b) property subject to the Lien of the impaired Secured Creditor is sold free and clear of that Lien, with that Lien attaching to the proceeds of the sale; or (c) the impaired Secured Creditor realizes the "indubitable equivalent" of its Claim under the Plan.

61. With respect to an Unsecured Claim, "fair and equitable" means either: (a) each impaired Unsecured Creditor receives or retains property of a value equal to the amount of its Allowed Claim; or (b) the holders of Claims and Interests that are junior to the Claims of the dissenting class will not receive any property under the Plan.

62. If one or more classes of impaired Claims rejects the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of Claims.

## CONCLUSION

63. [The Debtor urges the Debtor's Creditors to vote to accept the Plan and to evidence such acceptance by returning

23

their ballots so that they will be received no later than
November x, 2013.]

        Dated:    New York, New York
                  September 12, 2013

**The Bravo Realty Group, LLC**
Debtor and Debtor in Possession

By:   **_/s/  Mr. Frank Pecora_**,
            Manager/Member



        **LAW OFFICES OF GABRIEL DEL VIRGINIA**
        *Attorneys for the Debtor*

        **By:/s/ *Gabriel Del Virginia***
        Gabriel Del Virginia (GDV-4951)
        880 Third Avenue, 13th Floor,
        New York, New York 10022
        Telephone: 212-371-5478
        Facsimile: 212-371-0460
        *gabriel.delvirginia@verizon.net*

THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE
PLAN.   ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A
DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.
THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT
HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------X
In re

The Bravo Realty Group, LLC,                    Chapter 11
                                                Case No. 13-11330-reg


                              Debtor.
----------------------------X


### DEBTOR'S PLAN OF REORGANIZATION

Gabriel Del Virginia, Esq. (GDV-4951)
LAW OFFICES OF GABRIEL DEL VIRGINIA
880 Third Avenue, 13th Floor,
New York, New York 10022
Telephone: 212-371-5478
Facsimile: 212-371-0460
gabriel.delvirginia@verizon.net

ATTORNEYS FOR THE DEBTOR/PROPONENT

## INTRODUCTION

The Bravo Realty Group, LLC, ("Proponent" or "Debtor"), proposes this Plan of Reorganization to its Creditors. **UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG THE DEBTOR AND EACH OF THE DEBTOR'S CREDITORS (AS SUCH TERMS ARE DEFINED BELOW).**

## Article 1

### DEFINITIONS

As used in this Plan, the following terms will have the meanings hereinafter set forth:[1]

1.1 "Administrative Expense" Any cost or expense of administration of the Bankruptcy Case entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code.

1.2 "Administrative Expense Claim" shall mean claim for payment of an Administrative Expense.

1.3 "Allowance Date" shall mean the date which a Disputed Claim becomes an Allowed Claim by Final Order.

1.4 "Allowed Claim" shall mean a Claim: (a) to the extent that a Proof of Claim is filed timely or, with leave of the

_____

[1] Or as defined in the Disclosure Statement

2

Court late filed as to which (i) no party in interest files an objection or (ii) which is allowed by a Final Order; or (b) which is listed on the Proponent's schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent.

1.5 "Allowed Secured Claim" shall mean a Secured Claim to the extent it is an Allowed Claim.

1.6 "Allowed Unsecured Claim" shall mean an Unsecured Claim to the extent it is an Allowed Claim.

1.7 "Bankruptcy Case" shall mean this Chapter 11 bankruptcy case.

1.8 "Bankruptcy Code" shall mean Title 11 of the United States Code (11 U.S.C.§ § 101 et. seq.).

1.9 "Bankruptcy Court" shall mean the Court as defined below.

1.10 "Bar Date" shall mean September 30, 2013. The governmental bar date is October 25, 2013.

1.11 "Cash" shall mean all cash and cash equivalents which evidence immediately available funds in United States dollars.

1.12 "Claim" shall mean a right to payment as set forth in § 101(5) of the Bankruptcy Code.

3

1.13 "Claimant" shall mean the holder of a Claim.

1.14 "Confirmation Date" shall mean the date of the entry of the Confirmation Order.

1.15 "Confirmation Hearing" shall mean the hearing pursuant to the Bankruptcy Code Section 1128 before the Bankruptcy Court regarding the proposed confirmation of the Plan.

1.16 "Confirmation Order" shall mean the order of the Court confirming the Plan.

1.17 "Court" shall mean the United States Bankruptcy Court for the Southern District of New York.

1.18 "Creditor" shall mean any entity that holds a Claim against the Debtor.

1.19 "Debtor" shall mean The Bravo Realty Group, LLC.

1.20 "Disputed Claim" shall mean the whole or any portion of any claim against a Proponent to which an objection is timely filed as to which a Final Order has not been entered allowing or disallowing such Claim or any portion thereof.

1.21 "Effective Date" shall mean the Date upon which the Confirmation Order is a Final Order, or such other date after the Confirmation Date as may be practicable.

4

1.22 "Estate" shall mean the estate of the Proponent created upon the commencement of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

1.23 "Executory Contracts" shall mean "executory contracts" and "unexpired leases" as such terms are used within Section 365 of the Bankruptcy Code.

1.24 "Final Order" shall mean an order of the Court that has not been reversed, modified, amended or stayed, and as to which the time to appeal or to seek review or certiorari thereof has expired, and as to which no appeal, review or rehearing is pending.

1.25 "Foreclosure Action" shall mean the foreclosure action the New York Community Bank (the "NYCB") alleging only non – monetary defaults. "Interest" shall mean an existing ownership interest in the Debtor.

1.26 "Interest Holder" shall mean a holder and owner of an existing Interest in the Debtor.

1.27 "Legal Rate" shall mean the applicable interest rate as set forth in 28 U.S.C. §1961 as of the Petition Date.

1.28 "Lien" shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation.

1.29 NYCB shall mean the New York Community Bank.

1.30 "Mortgagee" shall mean NYCB.

1.31 "Petition Date" shall mean April 28, 2013.

1.32 "Plan" shall mean this Plan of Reorganization, and any and all modifications and/or amendments hereto.

1.33 "Property" or "Premises" shall mean five apartment buildings located at 2331-2337 Second Avenue and 246-248 East 120th Street, New York, New York 10021 in the Borough of Manhattan, City of New York.

1.34 "Proponent" shall mean The Bravo Realty Group, LLC.

1.35 "Secured Claim" shall mean a Claim secured by a Lien on property included within the Debtor's Estate.

1.36 "Secured Creditor" shall mean the owner or holder of a Secured Claim.

1.37 "Settlement Payments" shall mean the payments required to settle the Tenants Claims.

1.38 "Tenants" shall mean the residential tenant of the Property, which number 20.

1.39 "Tenants Claim" shall mean any and all claims that the Tenants may have against the Debtor for being unable to live in their apartments.

1.40 "Tenant Law Suit" shall mean lawsuit instituted a against the Debtor by five of the Tenants as a result of the Vacate Orders.

1.41 "Unsecured Claim" shall mean a claim for which the Claimant does not hold (a) a valid, perfected and enforceable Lien, security interest or other interest in or encumbrance against Debtor or the Debtor's Estate; (b) a right to setoff to secure the payment of such Claim. An Unsecured Claim includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract pursuant to Section 365 of the Bankruptcy Code, and does not include administrative of priority claims.

1.42 "Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

### <u>Article 2</u>

**CLAIMS CLASSIFICATION AND TREATMENT**

### <u>Class 1</u>

2.1 <u>**Classification**</u> – Real estate tax and other in rem governmental Lien Claims.  Claims total approximately $xxx,000.

2.2 <u>**Treatment**</u> - Payment in full in Cash of Priority Claims within in thirty days of the Effective Date.

2.3 <u>**Voting**</u> - Unimpaired and not allowed to vote on the Plan.

### <u>Class 2</u>

2.4 <u>**Classification –**</u> NYCB  Claim totals approximately $2,607,790.92.

2.5 <u>**Treatment**</u> – (i)Payment in full in Cash of Allowed Amount within thirty days of the Effective Date, plus interest at the applicable rate as it accrues from the Petition Date through the date of payment (ii) or payment of the amount necessary to reinstate the Lender's note and mortgage at the

8

non-default contract rate under section 1124(2) of the Bankruptcy Code, in full in cash on the Effective Date and Payment pursuant to the Lender's note and mortgage thereafter, except to the extent that a holder of the NYCB Claim agrees in writing to a different treatment.    The Debtor estimates that the NYCB claim is approximately $2,610,00.90 and it estimates that the cure amount pursuant to section 1124(2) is $234,830.00.

2.6 **Voting** – Unimpaired and not allowed to vote on the Plan.

### Class 3

2.7 **Classification** – Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code. Claims total approximately $-0-.

2.8 **Treatment** – Payment in full in Cash of Priority Claims within in thirty days of the Effective Date.

2.9 **Voting** - Unimpaired and not allowed to vote on the Plan.

### Class 4

2.10 **Classification** – Tenant Claim.

9

2.11 **Treatment** – Payment of $10,000.00 to each of the twenty (20) Tenants with a Tenant Claim within thirty days of the Effective Date.

2.12 **Voting** – Impaired and allowed to vote on the Plan.

### Class 5

2.13 **Classification** –  General Unsecured Claims.

2.14 **Treatment** – 100% of the allowed amount of each Claim shall be paid within one hundred and twenty (120) days after the Effective Date.

2.15 **Voting** –Impaired and allowed to vote on the Plan.

### Class 6

2.16 **Classification** – Equity Interests.

2.17 **Treatment** – Continued ownership of Interests in exchange for payment of amounts necessary to fund Effective Date payments.

2.18 **Voting** – Impaired and allowed to vote on the Plan.

### Article 3

**ADMINISTRATION CLAIMS AND UNITED STATES TRUSTEE FEES**

3.1 Allowed Administrative Expenses shall be paid in full in Cash on the Effective Date, or the date such Administrative Expense becomes Allowed, except to the extent that the holder of

10

an Allowed Administrative Expense agrees to a different treatment; provided however, that Allowed Administrative Expenses representing obligations incurred in the ordinary course of business or assumed by the Proponent shall be Paid in full or performed by the Proponent in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.   The United States quarterly fees and any applicable interest thereon shall be paid and operating reports shall be filed by the Debtor until the earlier of the conversion of this case to a case under Chapter 7, the dismissal of this case or the closing of this case by means of a final decree.

### **Article 4**

**MEANS FOR IMPLEMENTATION**

4.1   **Source of Funds** -- Effective Date payments under the Plan will be paid from funds to be advanced by the Debtor's Interest Holders or refinancing of the Property.   The Debtor estimates that Effective Date payments will include the amount due to the Mortgagee, Administration Claims, Unsecured Claims, and the Settlement Payments to the Tenants.

11

4.2 **Stamp Tax** -- Under the Plan, pursuant to Bankruptcy Code § 1146(c), (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax.

4.3 **Release of Liens** – Except as otherwise provided for in the Plan, on the Effective Date, (a) each holder of a Secured

12

Claim, shall on the Effective Date (x) turn over and release to the Reorganized Debtor any and all Collateral that secures or purportedly secures such Claim, as they pertain to the properties currently owned by the Debtor or such Lien shall automatically, and without further action by the Debtor or the Reorganized Debtor, be deemed released, and (y) execute such documents and instruments as the Reorganized Debtor requests to evidence such Claim holder's release of such property or Lien.

4.4 **Execution of Documents** -- The Debtor shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

4.5 **Vesting of Assets -- Except as otherwise provided in the Plan, on the Effective Date all assets and properties of the Estate shall vest in the Debtor free and clear of all Liens, Claims and encumbrances and any and all liens, claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date. Except as**

13

**otherwise provided herein, as of the Effective Date, all
property of the Debtor shall be free and clear of all Claims and
Interests of Creditors, except for the obligations that are
imposed under the Plan or by a Final Order of the Bankruptcy
Court.**

4.6 **<u>Recording Documents</u>** -- Each and every federal, state
and local governmental agency or department shall be authorized
to accept and record any and all documents and instruments
necessary, useful or appropriate to effectuate, implement and
consummate the transaction contemplated by the Plan, including,
but not limited to any and all notices of satisfaction, release
or discharge of any Lien, Claim or encumbrance not expressly
preserved by the Plan, and the Confirmation Order.

4.7 All rights pursuant to Sections 502, 544, 545 and 546
of the Bankruptcy Code, all preference claims pursuant to
Section 547 of the Bankruptcy Code, all fraudulent transfer
claims pursuant to Section 548 of the Bankruptcy Code, and all
claims relating to post-petition transactions under Section 549
of the Bankruptcy Code shall be preserved for the benefit of the
Debtor's estate, provided, however, that the Proponent shall
have sole authority for prosecuting any such claims.

14

## ARTICLE 5

### DISTRIBUTIONS TO CREDITORS

5.1   The Proponent or its counsel shall be disbursing agent under the Plan without a bond.   The Proponent reserves its right to file objections to claims in the event grounds exist to object to particular claims, for a period of 120 days after the Effective Date.   On the initial distribution date and on each distribution date as may thereafter be necessary, the Proponent shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full.   To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim.   After all the amounts of all undetermined claims have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.   Funds held in reserve will be held in a bank which is an authorized depository institution in the Southern District of New York.

15

## ARTICLE 6

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1  All unexpired leases and executory contacts not rejected prior to the Confirmation Date shall be deemed assumed under the Plan. In the event of a rejection of any Executory Contract which results in damage to the other party or parties to the Executory Contract, a Proof of Claim for such damages must be filed by the damaged party with the Court within sixty (60) days after the Effective Date.  Each Allowed Claims arising from the rejection of any Executory Contract shall be treated as an Unsecured Claim.  Any Claim arising from the rejection of any Executory Contract not filed with the Court within the time period provided in the preceding paragraph above shall be deemed discharged and shall not be entitled to participate in any distribution under the Plan.

## ARTICLE 7

### RETENTION OF JURISDICTION

7.1 Retention of Jurisdiction.  The Court shall have jurisdiction over all matters arising under, arising in, or relating to the Debtor's Bankruptcy Case including, but not limited to, proceedings:

16

7.2   To consider any modification of the Plan under section 1127 of the Bankruptcy Code;

7.3   To hear and determine all Claims, controversies, suits and disputes against the Debtor to the full extent permitted under 18 U.S.C. §1334 and 28 U.S.C. §157;

7.4   To hear, determine and enforce all Claims and causes of action which may exist on behalf of the Debtor or the Debtor's estate, including, but not limited to, any right of the Debtor or the Debtor's Estate to recover assets pursuant to the provisions of the Bankruptcy Code;

7.5   To hear and determine all requests for compensation and/or reimbursement of expenses which may be made;

7.6   To value assets of the Estate.

7.7   To enforce the Confirmation Order, the final decree, and all injunctions therein;

7.8   To enter an order concluding and terminating the Bankruptcy Case;

7.9   To correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order;

7.10 To determine all questions and disputes regarding title to the assets of the Debtor.

17

7.11 To re-examine Claims which may have been allowed for purposes of voting, and to determine objections which may be filed to any Claims.

## ARTICLE 8

### GENERAL PROVISIONS

8.1 Headings.   The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the Plan.

8.2 Disputed Claims.   The Proponent shall hold in escrow the distribution that would be due on account of any Disputed Claim.   No Disputed Claims shall be paid, nor shall distributions be made to a creditor holding a Disputed Claim, until such Claim becomes an Allowed Claim.

8.3 Calculation of Time Periods.   Bankruptcy Rule 9006 is incorporated herein for purposes of calculating the dates set forth herein.

8.4 Other Actions.   Nothing contained herein shall prevent the Proponent, Interest Holders, or Creditors from taking such actions as may be necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

18

8.5   Modification   of   Plan.     The   Proponent   may   seek amendments   or   modifications   to   the   Plan   in   accordance   with section   1127   of   the   Bankruptcy   Code   at   any   time   prior   to   the Confirmation   Date.     After   the   Confirmation   Date,   the   Proponent may   seek   to   remedy   any   defect   or   omission   or   reconcile   any inconsistencies   in   the   Plan   or   in   the   Confirmation   Order,   in such   manner   as   may   be   necessary   to   carry   out   the   purposes   and intent   of   the   Plan.     To   the   extent   there   are   post-confirmation material   modifications   to   the   Plan,   such   modifications   shall   be subject   to   notice   and   hearing   before   the   Bankruptcy   Court.

## ARTICLE 9

### INJUNCTION AND PROPERTY OF THE ESTATE

9.1   Injunction.     The   confirmation   of   this   Plan   shall constitute   an   injunction   of   the   Court   against   the   commencement or   continuation   of   any   action,   the   employment   of   process,   or   any act,   to   collect,   recover   or   offset   from   the   Debtor   or   its property   or   properties,   any   obligation   or   debt   except   pursuant to   the   terms   of   the   Plan.

19

## **ARTICLE 10**

### **CLOSING THE CASE**

10.1 The Debtor may move for a final decree to close the Bankruptcy Case within fourteen days following full administration of the estate.


Dated:      New York, New York
            September 12, 2013

                        **The Bravo Realty Group, LLC**
                        **Debtor and Debtor in Possession**

                        By:   **/s/  Mr. Frank Pecora**,
                              Manager/Member



         **LAW OFFICES OF GABRIEL DEL VIRGINIA**
         *Attorneys for the Debtor*

         **By:/s/ Gabriel Del Virginia**
         Gabriel Del Virginia (GDV-4951)
         880 Third Avenue, 13th Floor,
         New York, New York 10022
         Telephone: 212-371-5478
         Facsimile: 212-371-0460
         *gabriel.delvirginia@verizon.net*

## EXHIBIT B
## ASSETS AND LIABILITIES

| Real Property and misc. personal property | $4,900,000.00 |
|---|---|

| Liabilities[2] | |
|---|---|
| Real estate tax and other in rem governmental Lien Claims. | $44,293.23 |
| NYCB ((Secured) | $2,607,790.92 |
| Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code. | $32,900.00 |
| General Unsecured Claims | $120,052.63 |
| Tenant Claims[3] | $210,000.00 |
| **Total** | $1,884,963.22 |

---

[2] The Liabilities in the Exhibit are primarily based upon Claims and the Debtor's Schedules. With the exception of the Tenant Claims, the Debtor has not estimated potential claims that have not been filed or amounts scheduled.

[3] Assumes forgiveness of debt held by Equity Holders and their related companies.

21

### CHAPTER 7 LIQUIDATION ANALYSIS

| Assets | |
|---|---|
| Real Property and misc. personal property | $4,310,000.00 |

| Liabilities | |
|---|---|
| Administration Claims | $200,000.00 |
| Real estate tax and other in rem governmental Lien Claims. | $44,293.23 |
| NYCB (Secured) | $2,607,790.92 |
| Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code. | $4,039,975.47 |
| General Unsecured Claims | $4,039.00 |
| Tenant Claims | $210,000.00 |
| Total | ($2,796,098.62) |

Note: All claim amounts subject to objection.

22